**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

THOMAS G. STREET,

    *Plaintiff*,

v.

COMMISSIONER OF
SOCIAL SECURITY,

    *Defendant*.
_____/

CASE NO. 08-CV-14201

DISTRICT JUDGE ARTHUR J. TARNOW
MAGISTRATE JUDGE CHARLES E. BINDER

## **MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**[1]

### I. **RECOMMENDATION**

In light of the entire record in this case, I suggest that substantial evidence supports the Commissioner's determination that Plaintiff is not disabled. Accordingly, **IT IS RECOMMENDED** that Plaintiff's Motion for Summary Judgment be **DENIED**, that Defendant's Motion for Summary Judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

### II. **REPORT**

#### A. **Introduction and Procedural History**

Pursuant to 28 U.S.C. § 636(b)(1)(B), E.D. Mich. LR 72.1(b)(3), and by Notice of Reference, this case was referred to the undersigned magistrate judge for the purpose of reviewing

---

[1]The format and style of this Report and Recommendation are intended to comply with the requirements of the E-Government Act of 2002, Pub. L. 107-347, 116 Stat. 2899 (Dec. 17, 2002), the recently amended provisions of Fed. R. Civ. P. 5.2(c)(2)(B), E.D. Mich. Administrative Order 07-AO-030, and guidance promulgated by the Administrative Office of the United States Courts found at: http://jnet.ao.dcn/img/assets/5710/dir7-108.pdf. This Report and Recommendation only addresses the matters at issue in this case and is not intended for publication in an official reporter or to serve as precedent.

the Commissioner's decision denying Plaintiff's claim for supplemental security income benefits. This matter is currently before the Court on cross-motions for summary judgment. (Docs. 12, 15.)

Plaintiff was 51years of age at the time of the most recent administrative hearing, which was held on November 27, 2007. (Transcript, Doc. 9 at 23, 58.) Plaintiff's relevant employment history includes work as a carpenter for eighteen years. (Tr. at 81.) According to Plaintiff's application, he last worked in 2002. (*Id.*)

Plaintiff protectively filed the instant claim on December 2, 2004, alleging that he became unable to work on February 1, 2002. (Tr. at 58.) The claim was initially denied on April 4, 2005. (Tr. at 30, 45-49.) In denying Plaintiff's claims, the Defendant Commissioner considered COPD (chronic obstructive pulmonary disease) and affective disorders as possible bases of disability. (*Id.*)

On November 22, 2007, Plaintiff appeared with counsel before Administrative Law Judge ("ALJ") Thomas L. English, who considered the application for benefits *de novo*. (Tr. at 20-29.) In a decision dated December 17, 2007, the ALJ found that Plaintiff was not disabled because he retained the residual functional capacity to perform a limited range of light work. (Tr. at 28-29.) Plaintiff requested a review of this decision on January 9, 2008. (Tr. at 17.) On March 14, 2008, the Appeals Council granted a request for review. (Tr. at 518-21.)

The ALJ's decision became the final decision of the Commissioner, *see Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004), on May 29, 2008, when, after the review of additional exhibits[2] (Tr. at 467-521), the Appeals Council denied Plaintiff's request for review.

---

[2]In this circuit, where the Appeals Council considers additional evidence but denies a request to review the ALJ's decision, since it has been held that the record is closed at the administrative law judge level, those "AC" exhibits submitted to the Appeals Council are not part of the record for purposes of judicial review. *See Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996); *Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993). Therefore, since district court review of the administrative record is limited to the ALJ's decision, which is the final decision of the Commissioner, the court can consider only that evidence presented to the ALJ. In other words,

2

(Tr. at 10-15.) After having been granted a request for extension of time in which to file a civil action, on October 1, 2008, Plaintiff filed the instant suit seeking judicial review of the Commissioner's unfavorable decision. (Compl., Doc. 1.)

**B.      Standard of Review**

In enacting the social security system, Congress created a two-tiered system in which the administrative agency handles claims and the judiciary merely reviews the determination for exceeding statutory authority or for being arbitrary and capricious. *Sullivan v. Zebley*, 493 U.S. 521, 110 S. Ct. 885, 890, 107 L. Ed. 2d 967 (1990). The administrative process itself is multifaceted in that a state agency makes an initial determination which can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137, 142, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987). If relief is not found during this administrative review process, the claimant may file an action in federal district court. *Id.*; *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir. 1986) (en banc).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005). *See also Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007). *See also Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). "It is of course

---

Appeals Council evidence may not be considered for the purpose of substantial evidence review.

for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007). *See also Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, 'particularly since the ALJ is charged with observing the claimant's demeanor and credibility'") (citing *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence")); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may . . . consider the credibility of a claimant when making a determination of disability."). "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers,* 486 F.3d at 247 (quoting S.S.R. 96-7p, 1996 WL 374186, at *4).

If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g). Therefore, the court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006). *See also Mullen*, 800 F.2d at 545. The scope of the court's review is limited to an examination of the record only. *Bass,* 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers,* 486 F.3d at 241. *See also Jones*, 336 F.3d at 475. "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference

from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted) (citing *Mullen*, 800 F.2d at 545).

When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. App'x 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party"); *Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed. App'x 521, 526 (6th Cir. 2006).

### C. Governing Law

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994). *Accord Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed. App'x 515, 524 (6th Cir. 2003). There are several benefits programs under the Act, including the Disability Insurance Benefits Program ("DIB") of Title II, 42 U.S.C. §§ 401 *et seq.*, and the Supplemental Security Income Program ("SSI") of Title XVI, 42 U.S.C. §§ 1381 *et seq*. Title II benefits are available to qualifying wage earners who become disabled prior to the expiration of their insured status; Title XVI benefits are available to poverty stricken adults and children who become disabled. F. BLOCH, FEDERAL DISABILITY LAW AND PRACTICE § 1.1 (1984). While the two programs have different eligibility requirements, "DIB and SSI are available only

for those who have a 'disability.'" *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability" means:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two: If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three: If Plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.
>
> Step Four: If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

20 C.F.R. §§ 404.1520, 416.920. *See also Heston,* 245 F.3d at 534. "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates." *Colvin,* 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by [his] impairments and the fact that [he] is precluded from performing [his] past relevant work." *Jones*, 336 F.3d at 474 (cited with approval in *Cruse,* 502 F.3d at 540). If

the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Commissioner. *Combs v. Comm'r*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given [his] RFC [residual functional capacity] and considering relevant vocational factors." *Rogers,* 486 F.3d at 241 (citing 20 C.F.R. §§ 416.920(a)(4)(v), (g)).

### D. Administrative Record

A review of the relevant medical evidence contained in the administrative record and presented to the ALJ indicates that Plaintiff was treated at the Veteran's Administration hospital by Vanisree Suverna, M.D., for degenerative disk disease and COPD. (Tr. at 94-381.)

In August 2004, x-rays of the cervical spine revealed that the "alignment and height of the cervical vertebral bodies are preserved," "there is narrowing of the disk space of C5-6," and "moderate degenerative disk disease at L5-S1." (Tr. at 267-68, 400-02.) In July 2005, x-rays of the cervical spine showed that "alignment and height of the cervical vertebral bodies are preserved," "narrowing of the disk space of C5-6," "mild narrowing of the disk space of L5-S1, and mild facet joint arthritis." (Tr. at 189-90.) In February 2007, Plaintiff was examined by Dr. Suverna and his lungs showed "bilateral breath sounds," "no wheezing, no rales appreciated, no rhonci." (Tr. at 142.) In August 2007, an MRI of the abdomen revealed small cysts in the liver. (Tr. at 139, 469.) In September 2007, a CT scan of the abdomen and pelvis revealed that Plaintiff's "lung bases are clear" and showed "an ill-defined hypo density anterior in the left lobe of the liver" as well as a "benign cyst" of the liver and "mild degenerative changes of the spine." (Tr. at 95-96.) A CT scan of Plaintiff's head taken at the same time indicated that "[n]o acute intracranial abnormality [was] identified." (Tr. at 97.)

In November 2007, Plaintiff was examined by Thomas W. Keaveney, M.D., of the Shiawassee County FIA, who did "not find any evidence of inflammation in any of the joints . . . although [Plaintiff] does have some decreased range of motion in the lower back as well as the right hip. Due to this I do not think that he should be doing any heavy lifting, probably no more than 20 pounds, nor should he be doing any bending or twisting." (Tr. at 92.) In addition, with regard to Plaintiff's COPD, Dr. Keaveney found that Plaintiff had "mild obstructive and restrictive deficit" and that "complete cessation of smoking would be advisable." (*Id.*)

A physical Residual Functional Capacity (RFC) assessment performed in March 2005 concluded that Plaintiff could lift or carry up to 20 pounds occasionally, up to 10 pounds frequently, stand or walk (with normal breaks) for about 6 hours in an 8-hour workday, sit (with normal breaks) for about 6 hours in an 8-hour workday, and was unlimited in his ability to push or pull. (Tr. at 383.) The assessment also concluded that Plaintiff was occasionally limited in all postural limitations, e.g., climbing, crawling, and crouching. (Tr. at 384.) No manipulative, visual, communicative or environmental limitations were found, except that Plaintiff should avoid concentrated exposure to hazards. (Tr. at 385-86.) The assessment also found that Plaintiff was only "partially credible" in his claims of disabling pain and limitations. (Tr. at 387.) There was no treating source statement to compare with the assessment. (Tr. at 388.)

Pursuant to a request by Disability Determination Services (DDS), Richard C. Gause, M.D., examined Plaintiff and noted that Plaintiff "tended to give diagnoses rather than symptoms" and that Plaintiff's "symptoms and lack of joint motion raised a serious question with me as to his level of effort" because "[w]hen asked to perform certain range of motion studies he would stop and say 'That's all,' sometimes accompanied by a grimace, sometimes not." (Tr. at 392, 394.)

Shortly after he filed his application for benefits, Plaintiff indicated in a "Function Report–Adult" that he cares for his own personal hygiene needs, visits family, prepares meals such as sandwiches, does household repairs, goes outside almost everyday, shops for food and clothes once or twice a week for about an hour, pays bills and handles his own finances in general, goes fishing occasionally, plays cards, watches television and plays "dice" everyday, goes swimming, can lift 50 pounds for "not very long," can walk one mile or "no more than an hour," and has no problems paying attention, following directions, getting along with others, or handling stress. (Tr. at 68-75.)

At the administrative hearing, the ALJ asked a vocational expert (VE) to consider a person with Plaintiff's background

> who's able to perform work at the light exertional level as defined in the regulations, lifting and carrying up to 20 pounds occasionally, 10 pounds frequently; with a further modification requiring a sit/stand-at-will option; and no prolonged – or correction, no repetitive rotation, flexation, or hyperextension of the neck; and no climbing, crawling, squatting, or kneeling.

(Tr. at 549.) The VE testified that such a person could perform the following jobs available in the regional economy, e.g., Michigan: bench assembler (8,000), checker, packager (8,000)janitorial or security (2,000). When asked by the ALJ, the VE confirmed that his responses were consistent with information provided in the Dictionary of Occupational Titles (DOT). (Tr. at 550.)

### E. ALJ Findings

The ALJ applied the Commissioner's five-step disability analysis to Plaintiff's claim and found at step one that Plaintiff had not engaged in substantial gainful activity since November 10, 2004. (Tr. at 25.) At step two, the ALJ found that Plaintiff's degenerative disc disease of the cervical and lumbar spine and chronic obstructive pulmonary disease were "severe" within the meaning of the second sequential step. (*Id.*) At step three, the ALJ found no evidence that

Plaintiff's combination of impairments met or equaled one of the listings in the regulations. (*Id.*) At step four, the ALJ found that Plaintiff was unable to perform any past relevant work. (Tr. at 27.) At step five, the ALJ found that Plaintiff was a younger individual, age 18-49, and that he is able to perform a limited range of light work. (Tr. at 28-29.) Thus, the ALJ found that Plaintiff was not disabled. (Tr. at 29.)

### F. Analysis and Conclusions

#### 1. Legal Standards

The ALJ determined that Plaintiff possessed the residual functional capacity to perform light work. (Tr. at 26.)

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).

After review of the record, I suggest that the ALJ utilized the proper legal standard in his application of the Commissioner's five-step disability analysis to Plaintiff's claim. I turn next to the consideration of whether or not substantial evidence supports the ALJ's decision.

#### 2. Substantial Evidence

Plaintiff argues that substantial evidence fails to support the findings of the Commissioner. As noted earlier, if the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if this Court would have decided the matter differently and even where substantial evidence supports the opposite conclusion. *McClanahan,* 474 F.3d at 833; *Mullen,* 800

F.2d at 545. In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

Plaintiff specifically contends that the ALJ did not include all of Plaintiff's impairments in the hypothetical posed to the VE. (Doc. 12 at 17.) Plaintiff explains that the hypothetical did not adequately include: (1) Plaintiff's symptoms relating to COPD because Plaintiff smokes cigarettes; (2) his limitations, although he did include an option to stand or sit at will; (3) his constant pain up and down the spine as well as headaches even though he did note that Plaintiff has a decreased range of motion. (Doc. 12 at 17- 20.)

I suggest that the ALJ's findings accurately portrayed Plaintiff's individual limitations in providing for a sit/stand at-will option and by precluding hyperextension or flexation of the neck and by specifically requiring that the job not entail any climbing, crawling, squatting or kneeling. (Tr. at 549.) The hypothetical's limitations even exceeded those suggested by the RFC assessment. (Tr. at 383-85.) I further suggest that the hypothetical was in harmony with the objective record medical evidence as well as the daily activities described by Plaintiff himself that he cares for his own personal hygiene needs, visits family, prepares meals such as sandwiches, does household repairs, goes outside almost everyday, shops for food and clothes once or twice a week for about an hour, pays bills and handles his own finances in general, goes fishing occasionally, plays cards, watches television and plays "dice" everyday, goes swimming, can lift 50 pounds for "not very long,"can walk one mile or "no more than an hour," and has no problems paying attention, following directions, getting along with others, or handling stress. (Tr. at 68-75.) *See Griffeth v. Comm'r of Soc. Sec.*, 217 Fed. App'x 425, 429 (6th Cir. 2007); *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987).

Plaintiff also contends that the ALJ failed to satisfy Step Five because although the ALJ inquired whether the VE's testimony was consistent with the Dictionary of Occupational Titles (DOT) and the VE responded that it was consistent, Plaintiff argues that "there is no sit/stand position listed in the DOT" so Plaintiff further argues that "the conflict is apparent, and it is one that the ALJ must explore in order to meet her burden under SSR 00-4p." (Doc. 12 at 24.) In this Circuit, Social Security Ruling 00-4p is satisfied, however, by the ALJ simply asking the VE if his testimony is consistent with the DOT. *See Martin v. Comm'r of Social Security*, 170 Fed. App'x 369, 375-76 (6th Cir. 2006). In addition, the fact that the DOT is silent on an aspect of the hypothetical does not create a "conflict" with the DOT.

Therefore, I suggest that the ALJ was not under any obligation to inquire any further into the accuracy of the VE's testimony. *See Ledford v. Astrue*, 311 Fed. App'x 746, 757 (6th Cir. 2008) ("Nothing in the applicable Social Security regulations requires an administrative law judge to conduct his or her own investigation into the testimony of a vocational expert to determine its accuracy, especially when the claimant fails to bring any conflict to the attention of the administrative law judge"); *Davidson v. Astrue*, No. 08-60-DLB, 2009 WL 3161358, at *3-4 (E.D. Ky. Sept. 28, 2009) (unpublished) (where Plaintiff "did not bring the alleged conflict to the attention of the ALJ, the ALJ was not required to inquire further whether the vocational expert's testimony was correct"); *Rowe v. Astrue*, No. 07-348-JMH, 2008 WL 1711538, at *3 (E.D. Ky. Apr. 10, 2008) (unpublished) (where hypothetical accurately reflected plaintiff's limitations and ALJ was unaware of any conflict, ALJ was under no duty to explain how conflict was resolved); *Winstead v. Comm'r*, No., 2008 WL 819073, at *15-16 (S.D. Ohio Mar. 25, 2008) (unpublished) (where question posed to VE accurately reflected the plaintiff's limitations, the plaintiff's contention that the ALJ erred in failing to inquire into possible conflicts was without merit).

Accordingly, after review of the record, I conclude that the decision of the ALJ, which ultimately became the final decision of the Commissioner, is within that "zone of choice within which decisionmakers may go either way without interference from the courts," *Felisky*, 35 F.3d at 1035, as the decision is supported by substantial evidence.

### III. REVIEW

Pursuant to Rule 72(b)(2) of the Federal Rules of Civil Procedure, "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy." Fed. R. Civ. P. 72(b)(2). *See also* 28 U.S.C. § 636(b)(1). The response shall be concise, but commensurate in detail with the objections, and shall address specifically, and in the same order raised, each issue contained within the objections.

Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596 (6th Cir. 2006); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *McClanahan*, 474 F.3d at 837; *Frontier Ins. Co.,* 454 F.3d at 596-97.

                                     s/ Charles E Binder
                                     CHARLES E. BINDER
Dated: March 2, 2010                      United States Magistrate Judge

## **CERTIFICATION**

      I hereby certify that this Report and Recommendation was electronically filed this date and served upon counsel of record via the Court's ECF System.

Date: March 2, 2010                                          By     s/Patricia T. Morris
                                                                                    Law Clerk to Magistrate Judge Binder